IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANEA ANDREW and ANTOINNE ANDREW | : | CIVIL ACTION |
| v. | : | |
| IVANHOE FINANCIAL, INC., | : | |
| GA SUPERIOR REAL HOLDINGS, LLC, | | NO. 07-729 |
| GRANITE MORTGAGE CO., INC., BRAD BAGEL, | : | |
| LEE BAGEL, and MORTGAGE ELECTRONIC | | |
| REGISTRATION SYSTEMS, INC. | : | |

**MEMORANDUM RE: ALL OUTSTANDING MOTIONS**

**Baylson, J.**                                                                                                    **May 30, 2008**

The present case centers around the purchase, mortgage and ultimate foreclosure of a home located in Philadelphia, Pennsylvania. Plaintiffs' efforts in this Court to reverse a state court foreclosure by default must be rejected. There are currently three outstanding motions: Plaintiffs' Motion to Reinstate First Amended Complaint as to Defendant MERS and for Leave to File an Amended Complaint (Doc. No. 35), Defendants Lee Bagel, Brad Bagel, and GA Superior's Motion for Summary Judgment (Doc. No. 46), and Plaintiff's Motion to Strike (Doc. No. 47). For the reasons discussed below, Plaintiffs' Motion to Reinstate MERS and File a Second Amended Complaint will be granted, but Plaintiffs' Complaint will be dismissed.

**I.      Background**

The factual background of this case has been discussed in Andrew v. Ivanhoe Financial, Inc., 2007 WL 2844937 (E.D.Pa. Sept. 28, 2007) (hereinafter "the September 28 Order"). In short, Danea and Antoinne Andrew (hereinafter "Plaintiffs," "the Andrews") are suing multiple defendants concerning the purchase and mortgage of their home, located at 6636 N. Gratz Street,

Philadelphia, Pennsylvania (hereafter, the "Andrews property," "the property").  Defendants GA Superior and Brad and Lee Bagel (hereinafter "the Seller Defendants") sold the premises to Plaintiffs.  Defendant Granite Mortgage (hereinafter "Granite") was Plaintiffs' mortgage broker and submitted a loan application on behalf of Plaintiffs to Ivanhoe Financial, Inc. (hereinafter "Ivanhoe"), and Ivanhoe became Plaintiffs' lender.[1]  The loan was assigned to MERS, which is the nominee for Midwest First Financial, Inc., and the loan appears to have been paid by Plaintiffs through January 2006.  From February 2006 through August 2006, Plaintiffs failed to make any monthly mortgage payments on the property.  In August, 2006, Midwest First Financial sent an Act 91 notice to Plaintiffs, stating that the property was in danger of being foreclosed unless Plaintiffs made payments.  (Def.'s Mot. to Dismiss (Doc. No. 2), Ex. C).  Plaintiffs continued to fail to make payments.  MERS filed a civil action to foreclose the mortgage in the Philadelphia County Court of Common Pleas against Plaintiffs on December 20, 2006.  MERS obtained a default judgment in mortgage foreclosure in that Court on February 8, 2007.[2]

Plaintiffs filed their initial complaint in this Court on February 22, 2007.  (Doc. No. 1). Plaintiffs filed a First Amended Complaint on October 16, 2007 (Doc. No. 23).  Plaintiffs filed a Motion to Reinstate the First Amended Complaint as to Defendant MERS and for Leave to File a

---

[1] Granite was served (see Doc. No. 40) on January 25, 2008, but has not appeared and Plaintiffs have not taken any default.  The docket does not show any service as to Ivanhoe.  Both of these defendants will be dismissed as parties for lack of prosecution.

[2] A print-out version of the mortgage foreclosure judgment can be found as Exhibit B of Defendant's Motion to Dismiss (Doc. No. 2).  It can also be viewed online on the Civil Docket of the Philadelphia County Court of Common Pleas.  See http://fjdweb2.phila.gov/fjd/zk_fjd_public_qry_03.zp_dktrpt_frames?case_id=061202537

Second Amended Complaint (Doc. No. 35, 36).[3]  Defendants filed Response briefs (Doc. No. 37, 41).  Plaintiffs filed Reply briefs (Doc. No. 38, 45).  Seller Defendants filed a Motion for Summary Judgment (Doc. No. 46).  Plaintiffs filed a Response to Defendants' Motion (Doc. No. 53, 54).  Seller Defendants filed a Reply to Plaintiffs' Response (Doc. No. 56).  Plaintiffs filed a Motion to Strike Seller Defendants' Motion for Summary Judgment (Doc. No. 47).  Seller Defendants filed a Response to Plaintiffs' Motion to Strike (Doc. No. 49).  Oral argument was held on May 20, 2008.

**II.     Contentions of the Parties**

       A.     Plaintiffs' Motion to Reinstate First Amended Complaint

On September 28, 2007, this Court dismissed Plaintiffs' Complaint without prejudice and granted Plaintiffs leave to file an Amended Complaint within fourteen days.[4]  Andrew v. Ivanhoe Financial, Inc., 2007 WL 2844937, at *5.  Plaintiffs filed their First Amended Complaint through the electronic court filing system (hereinafter "ECF") on October 16, 2007.  As a result of the September 28 Order, it appears that Defendant MERS was terminated by ECF and therefore did not receive service of the First Amended Complaint.  Plaintiffs seek to reinstate their First Amended Complaint against MERS and ask permission to file a Second Amended Complaint.

Defendant MERS contests Plaintiffs' Motion, and notes in a footnote that it was terminated from the action due to Plaintiffs' late filing.  MERS further argues that the Amended Complaint which Plaintiffs seek to file fails to cure any of the defects in the original complaint.

---

[3] The proposed Second Amended Complaint was filed as an exhibit, but separately docketed as Document Number 36.

[4] Thus, the Amended Complaint had to be filed by October 12, 2007.

MERS contends that the First Amended Complaint contains wholly conclusory allegations without any substantive merit which might implicate MERS.  MERS argues that the new allegations in the First Amended Complaint involving MERS are few and insufficient to create any new claims against MERS.  MERS contends that the alleged violations of the Equal Credit Opportunity Act ("ECOA") and the Real Estate Settlement Procedures Act ("RESPA") are wholly conclusory and without merit.  Further, MERS contends that the true issue is whether any claims seeking rescission of the loan survive the entry of mortgage foreclosure against Plaintiffs, and MERS argues they do not.  MERS points out that the statute of limitations for TILA and HOEPA claims is one year; and even if Plaintiffs argue that equitable tolling may apply, these claims fail because they are subject to the heightened pleading requirement of Rule 9(b) since they are based on a theory of fraudulent concealment, and Plaintiffs fail to meet this pleading burden.

Plaintiffs argue that MERS's response should have been filed as a Motion to Dismiss, and the Court will consider it as such.  Plaintiffs contend that the Rooker-Feldman doctrine is inapplicable in this action in mortgage fraud because the Pennsyvlania Rules of Civil Procedure preclude this action being brought as a counterclaim to the underlying foreclosure, this action requests remedies at law and equity, and the underlying foreclosure judgment was a default judgment and thus not adjudicated on the merits.  Plaintiffs also argue that their First Amended Complaint was timely.  Plaintiffs further contend that arguments pertaining to the Rooker-Feldman doctrine, the statute of limitations or lack of specificity in claims should be reviewed after Plaintiffs are granted leave to file the Second Amended Complaint.

B.     The Seller Defendants' Motion for Summary Judgment[5]

In their Motion for Summary Judgment, the Seller Defendants argue that Plaintiffs have failed to allege a cause of action against them under <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007).  With respect to the claim of conspiracy, no facts are alleged as to why Seller Defendants are liable for actions of Plaintiffs' own agent, the mortgage broker or the appraiser. The Seller Defendants contend that the claims of negligence, breach of contract and fraud are not properly pled.  The Seller Defendants argue there is no case law which would support any of the federal or state law claims under the facts alleged.

In their response, Plaintiffs conceded withdrawal of a number of causes of actions in their Second Amended Complaint as to all Defendants.  Plaintiffs further concede that if this Court denies Plaintiffs' Motion to reinstate Defendant MERS as a party, this Court would then lack jurisdiction over the remaining counts as they would all be state causes of action.  Plaintiffs contend that they are still entitled to discovery, that <u>Twombly</u> did not alter the liberal pleading standard, and that the proposed Second Amended Complaint should be docketed in view of this case's procedural history.

In their Reply, Seller Defendants outline the claims upon which Plaintiffs are proceeding. Although Seller Defendants rely on the counts as numbered in the First Amended Complaint, it is clear from Plaintiffs' Response that Plaintiffs are relying on the counts as numbered in their proposed Second Amended Complaint.  Seller Defendants argue that the cause of action for negligence is improperly pled, the cause of action for fraud lacks specificity, and the breach of

---

[5] Seller Defendants did not include a Statement of Undisputed Facts with their Motion for Summary Judgment, which is required by this Court's procedures.

contract claim is likewise barred by the integration clause and the doctrine of merger. They contend that the UTPCPL and punitive damages claims must also fail as they derive from the underlying claims.

      C.      <u>Plaintiffs's Motion to Strike</u>

Plaintiffs ask this Court to strike Seller Defendants' Motion for Summary Judgment until Plaintiffs have been given time for discovery and until this Court decides Plaintiffs' Motion for Leave to Reinstate and File an Amended Complaint.

Seller Defendants argue that the Motion to Reinstate and File an Amended Complaint is not a valid reason for striking a Motion for Summary Judgment, as Plaintiffs have not alleged a cause of action against Defendants and should not be given any more time to do so.

### III. Legal Analysis

This Court will grant Plaintiffs' Motion to Reinstate Defendant MERS as a defendant, and will accept Plaintiffs' Second Amended Complaint. This Court will also accept Plaintiffs' concessions in their response to Seller Defendants' Motion for Summary Judgment as to the withdrawal of a number of causes of action in their Second Amended Complaint.[6]

The remaining claims, which are three federal claims and various claims under state law, in the Second Amended Complaint are:

- Count I: Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601, <u>et seq.</u>;
- Count II: Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, <u>et seq.</u>;
- Count III: Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2602,

---

[6] Plaintiffs' multiple complaints and counts, and "shotgun" style of pleading multiple legal theories, but very few facts, has made analysis difficult. The withdrawal of many claims in the Second Amended Complaint, after Defendants' motions were filed, implies a lack of careful drafting and research as expected in federal practice.

>     et seq.;
> - Count IX: Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa.C.S. § 2270.3;
> - Count X: Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. 201-3.1; 37 Pa. Code § 303.3(3);
> - Count XVI: Fraud & Fraudulent Misrepresentation;
> - Count XVII: Breach of Contract & Warranty;
> - County XVIII: Negligence, Negligent Misrepresentation and Improvident (Negligent) Lending;
> - Count XIX: Breach of Covenant of Good Faith and Fair Dealing;
> - Count XX: Breach of Fiduciary Duty; and
> - Count XXI:[7] Conspiracy, Acting in Concert and Aiding and Abetting.

Plaintiffs seek rescission of the loan, termination of any security interest in Plaintiffs' property which may have been created under the loan, return of any money or property given by Plaintiffs to anyone in connection with the transaction, forfeiture and return of loan proceeds, attorney's fees and expenses, as well as statutory, actual, treble, and punitive damages. (Second Am. Compl. at 18-19).

As discussed and agreed to by the parties during oral arguments on May 20, 2008, the Court will consider Seller Defendants' Motion for Summary Judgment as stating legal arguments in support of a Motion to Dismiss. Factual materials will be ignored, due to the fact that no discovery has been taken.

A.   Jurisdiction and Standard of Review

   1.   *Jurisdiction*

If this Court has federal question jurisdiction, it would exist under the Truth-in-Lending Act, 15 U.S.C. § 1635, et seq. ("TILA"), the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, et seq., and/or the Real Estate Settlement Procedures Act

---

[7] In the proposed Second Amended Complaint, Count XXI is misnumbered as Count X.

("RESPA"), 12 U.S.C. § 2602. The existence of subject matter jurisdiction is at issue in this case, and is discussed, infra.

    2.  *Standard of Review*

When evaluating whether a federal court has subject matter jurisdiction over a cause of action pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). The court "may not presume the truthfulness of plaintiff's allegations, but rather must evaluate for itself the merits of the jurisdictional claims." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (brackets omitted).

  B.  <u>TILA and HOEPA Damage Claims - Statute of Limitations</u>

Counts I and II are alleged solely against Ivanhoe Financial, MERS and Granite Mortgage. Plaintiffs allege that Defendants did not provide Plaintiffs with the necessary disclosures concerning, among other subjects, the amount financed, the finance charge, and the annual percentage rate, required by TILA and Regulation Z of the Federal Reserve Board ("Regulation Z"), 12 C.F.R. § 226.1.

The purpose of TILA is "to avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). HOEPA sets forth additional disclosure requirements that must be met three days prior to the consummation of a lending transaction for high rate mortgages. 15 U.S.C. § 1639(b). Plaintiffs' claims pursuant to TILA and HOEPA can be considered together because HOEPA is an amendment of TILA , and therefore is governed by the same remedial scheme and statutes of limitations. Harris v. EMC Corp., 2002 WL 32348324, at *2 (E.D.Pa. Apr. 10, 2002). There is a

one-year statute of limitations on affirmative TILA and HOEPA damage claims, and there is a three-year statute of limitations as to claims of rescission. See 15 U.S.C. §§ 1635(f), 1640(e); In re Community Bank of Northern Virginia, 418 F.3d 277, 305 (3d Cir. 2005). A statute of limitations begins to run when the cause of action accrues. Oshiver v. Levin, Fishbein Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994).

In the instant case, the action would accrue at Closing, on February 22, 2005. (Second Am. Compl., ¶ 19). Plaintiffs filed their initial complaint on February 22, 2007. Thus, unless Plaintiffs have shown that there is justification for equitable tolling, the statute of limitations has run on their TILA and HOEPA claims with respect to damages.

    1.    *Failure to Justify Equitable Tolling*

The doctrine of "equitable tolling" operates to stop the statute of limitations from running when the claim's accrual date has already passed. Oshiver, 38 F.3d 1380 at 1387. This doctrine allows a court to decide on a case-by-case basis whether to extend a statute of limitations in order to prevent inequity. Colletti v. N.J. Transit Corp., 50 Fed. Appx. 513 (3d Cir. 2002) (unpublished opinion); Wise v. Mortgage Lenders Network USA Inc., 420 F. Supp. 2d 389, 393 (E.D.Pa. 2006). The Third Circuit has identified three scenarios when equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. Oshiver, 38 F.3d at 1387; Wise, 420 F.Supp. 2d at 393-94. In the present case, Plaintiffs' claims are subject to equitable tolling, if at all, under the first alternative listed, and equitable tolling would be appropriate if there has been fraudulent

concealment. Smith v. EquiCredit Corp., 2002 WL 32349873, at *4 (E.D.Pa. Oct. 4, 2002).

Allegations of fraudulent concealment tolling the statute of limitations must meet the requirements of Federal Rule of Civil Procedure 9(b). Byrnes v. DeBolt Transfer, Inc., 741 F.2d 620, 626 (3d Cir. 1984); Northrop v. Lease Financing Corp., 1987 WL 33042, at *4 (Dec. 17, 1987); Matthews v. Kidder, Peabody & Company, Inc., 2000 WL 33726916, at *28 (W.D.Pa. Aug. 18, 2000). Pursuant to Rule 9(b), in alleging a claim of fraud, a party must state with particularity the circumstances concerning fraud. See Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004) (stating in an allegation of fraud, the plaintiff must plead with particularity "who made a misrepresentation to whom and the general content of the misrepresentation" in order to place the defendants on notice of the precise misconduct alleged).

In a prior case, the undersigned has determined that equitable tolling is applicable to a similar TILA and HOEPA action. See Wise v. Mortgage Lenders Network USA Inc., 420 F. Supp. 2d 389 (E.D.Pa. 2006). Wise is distinguishable, however, from the present case. In Wise, plaintiffs alleged specific allegations of fraud, claiming in their pleadings that the defendants had actively and intentionally misled them. Id. at 394. The plaintiffs in Wise also alleged facts to support their claim that they used reasonable diligence in investigating the alleged fraud, but that defendant prevented plaintiffs from discovering the fraud and misconduct. Id. at 394-95. No such claims are made in the instant case. Plaintiffs do not dispute the applicability of Rule 9(b) to their claims of equitable tolling, but instead maintained at oral argument that their Second Amended complaint satisfied this pleading threshold. Indeed, Plaintiffs' counsel cited specific paragraphs of the Second Amended Complaint that he thought would satisfy Rule 9(b). Yet none of the paragraphs cited by Plaintiffs' counsel, nor any of the remaining paragraphs in the Second

Amended Complaint, satisfy the pleading requirements of Rule 9(b). Plaintiffs' allegations that Defendants "conspired to unfairly and deceptively induce Plaintiffs to execute loan documents . . . premised upon a falsely inflated appraisal price" are simply not specific enough. They are general and wholly conclusory allegations, and no Defendant reading them would know "with particularity" what acts or omissions were the subject of such allegations. As such, Plaintiffs have failed to satisfy the pleading requirements of Rule 9(b), and equitable tolling is thus inapplicable to these claims. Plaintiffs' damage claims pursuant to TILA and HOEPA will be dismissed with prejudice.

      C.      TILA and HOEPA Rescission Claims, and RESPA - The Rooker-Feldman Doctrine

The remaining federal claims are Plaintiffs' TILA and HOEPA claims with respect to rescission, which are within the three-year statute of limitations, and Plaintiffs' claim pursuant to RESPA.

In their Second Amended Complaint, Plaintiffs contend that all Defendants are in violation of RESPA due to Defendants' alleged failure to properly respond to Plaintiffs' qualified written request. Plaintiffs state if such qualified written request was not previously and properly delivered, they are making such a request in their complaint. (Second Am. Compl., ¶ 68).

RESPA is designed to ensure that consumers are made aware of settlement procedures and costs by imposing certain disclosure requirements, and to eliminate kickbacks and referral fees that increase the cost of the settlement process. 12 U.S.C. § 2601(b). The Act applies to federally related mortgage loans issued by federally insured lenders or creditors (as defined in TILA) that make residential real estate loans. 12 U.S.C. § 2602(1)(B)(iv); Morilus v.

Countrywide Home Loans, Inc., 2007 WL 1810676, at *3 (E.D.Pa. June 20, 2007). RESPA also requires "qualified written requests," which is a "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Creditors have 60 days following the receipt of a qualified written request to make requested changes in the borrowers account, notify the borrower of the results of any investigation pertaining to the account, and transmit the name and telephone number of a representative who can answer any questions about the account. 12 U.S.C. § 2605(e)(2). A party to the loan transaction is not subject to RESPA requirements for responding to a qualified written request unless that party actually received the qualified written request. Morilus at *3, citing Parker v. Long Beach Mortg. Co., 2006 U.S. Dist. LEXIS 72683, at *9 (E.D.Pa Oct. 5, 2006).

     Plaintiffs' RESPA claim is flawed in many respects. First, Plaintiffs have provided no details or any information whatsoever concerning sending such requests, or which if any parties received these qualified written requests. Plaintiffs seem to acknowledge as much, as they state that if such requests have not been served before, the Second Amended Complaint serves as Plaintiffs' qualified written request. This is unsatisfactory[8] and the RESPA claim must therefore

---

[8] While RESPA does not appear to provide any deadlines for sending qualified written requests, it is absurd that Plaintiffs would attempt to send them now, over three years after closing and in their third draft of a complaint. Further, if Plaintiffs' statement in the Second Amended Complaint was accepted as a qualified written request, Defendants would then have 60 days from today - the day the Court accepted the Second Amended Complaint - to respond. As

be dismissed. C.f. Morilus, 2007 WL 1810676, at *4.[9]

Second, as discussed explicitly in this Court's September 28 Order, RESPA does not provide Plaintiffs with the relief they seek. Even if the Court accepts as true the contention that Plaintiffs sent qualified written requests to all Defendants, Plaintiffs would still not be entitled to a rescission of their mortgage. Section 2605(f) of RESPA provides for liability for noncompliance with written requests, outlining the damages and costs of noncompliance. Rescission of the mortgage is not included in the list of possible measures of relief. Plaintiffs cite no authority to support their claim.

Finally, assuming arguendo that RESPA, TILA or HOEPA could provide Plaintiffs with any relief, such relief is barred by the Rooker-Feldman doctrine. The Rooker-Feldman doctrine arose from two cases in which the Supreme Court concluded that federal courts do not have jurisdiction to review the judgments and decision of state courts.[10] The doctrine is narrowly tailored and only applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

---

the time limit has yet to run, Defendants have not failed to meet any responsibilities pursuant to RESPA and Plaintiffs fail to state a claim.

[9] In Morilus, Judge Stengel permitted plaintiffs leave to file an amended complaint under Rule 15, so that they would have the opportunity to clarify their RESPA claims. This Court will not follow suit. Plaintiffs have filed two amended complaints, and neither brought any clarity to the claims made under RESPA. In fact, the claims under RESPA have become less specific with the filing of successive complaints; in the initial complaint, the RESPA claim was described in twelve paragraphs, while the Second Amended Complaint only devotes two paragraphs to it. There is no reason to believe that any more clarity would result from allowing Plaintiffs a fourth bite at the apple.

[10] These cases are Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005).  Thus, the Rooker-Feldman doctrine bars lower federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment.  Marran v. Marran, 376 F.3d 143, 149 (3d Cir. 2004).  A case is the functional equivalent of an appeal from a state court judgment in two instances: (1) when the claim was actually litigated before the state court; or (2) when the claim is inextricably intertwined with the state adjudication.  ITT Corporation v. Intelnet International Corporation, 366 F.3d 205, 210 (3d Cir. 2004).  A federal claim is "inextricably intertwined" with an issue adjudicated by a state court when: (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment.  Walker v. Horn, 385 F.3d 321, 330 (3d Cir. 2004).

In 2005, the U.S. Supreme Court held that the Rooker-Feldman doctrine did not apply when defendants in a state court action file a parallel action in federal court as a protective measure, finding that the doctrine was to be applied in "limited circumstances."  Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 291 (2005).  The Court found that concurrent jurisdiction does not vanish if a state court reaches judgment on the same or related question while the case remains sub judice in a federal court.  Id. at 292.

While other courts have reconsidered their application of the Rooker-Feldman doctrine in various post-Exxon decisions, the Third Circuit has not done so.  Indeed, since Exxon, the Third Circuit has found that a plaintiff's claim effectively asking a federal district court to negate a state court default judgment in a foreclosure action is barred by the Rooker-Feldman doctrine.  In

re Knapper, 407 F.3d 573, 581 (3d Cir. 2005). Both before and after the Exxon decision, other courts have reached the same conclusion. See Crutchfield v. Countrywide Home Loans, 389 F.3d 1144, 1145-46 (10th Cir. 2004) (vacating the district court's summary judgment order because the "presence of a state court default judgment foreclosing on the mortgage ousts [the Court's] subject matter jurisdiction" under Rooker-Feldman); In re Madera, 2008 WL 834382, at *9-10 (E.D.Pa. Mar. 26, 2008) (affirming the bankruptcy court's application of the Rooker-Feldman doctrine to plaintiffs' similar TILA claims, as a state mortgage foreclosure action depends upon the existence of a valid mortgage, and granting the rescission of a loan pursuant to TILA would have the effect of invalidating the mortgage); Smith v. Litton Loan Servicing, LP, 2005 W.L. 289927, at *7 (E.D.Pa. 2005) (finding that the Rooker-Feldman doctrine prevented plaintiffs from appealing the state court's foreclosure ruling in federal court); Byrd v. Homecomings Financial Network, 407 F.Supp. 2d. 937, 943-44 (N.D. Ill. 2005) (holding the Rooker-Feldman doctrine barred mortgagor's RESPA and TILA claims, which sought to collaterally attack the state court's mortgage foreclosure judgment).

      Moreover, the present case differs from Exxon, as this case does not involve navigating the waters of concurrent jurisdiction. On February 8, 2007, a default judgment of foreclosure was issued against the Andrews in the Philadelphia County Court of Common Pleas regarding the property. Plaintiffs did not file a petition for relief from judgment of default pursuant to Pennsylvania Rule of Civil Procedure 237.3. Plaintiffs filed their complaint in this court two weeks later. Thus, the default judgment was a prior final determination by the state court and, therefore, this Court cannot overturn the judgment of the final determination made by the Philadelphia County Court of Common Pleas. See In re Knapper, 407 F.3d 573, 380 (3d Cir.

2005); FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996). Although Plaintiffs are correct that Pennsylvania state court procedures do not provide for a counterclaim against a foreclosure petition, Plaintiffs could have filed a petition for relief from default under Rule 237.3. If this Court were to grant Plaintiffs' RESPA and TILA claims, this would rescind the default and effectively negate the state court's foreclosure judgment, and basically allow a federal court to reverse settled state court real estate law. There is no indication that Congress intended such a result in TILA, HOEPA, RESPA, or any other statute. In their multiple complaints and responses since the September 28 Order, Plaintiffs have failed to show how their claims survive the Rooker-Feldman doctrine. If the Andrews wanted to challenge the foreclosure, their only option would have been to petition for relief under Rule 237.3 or appeal to the appropriate Pennsylvania state court.[11]

**V.     Conclusion**

Thus, despite the Court's most indulgent review of the allegations proferred in Plaintiffs' Second Amended Complaint, Plaintiffs have failed to state a claim within this Court's jurisdiction. As the only remaining claims are pursuant to state law, this Court does not have jurisdiction to review them.

An appropriate order follows.

---

[11] As stated in the September 28 Order, if the period for appeal to correct any errors in a state court judgment has expired, the "aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly" by pursuing relief in federal court. See Rooker, 263 U.S. at 416.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANEA ANDREW and ANTOINNE ANDREW | : | CIVIL ACTION |
| v. | : | |
| IVANHOE FINANCIAL, INC., | : | |
| GA SUPERIOR REAL HOLDINGS, LLC, | | NO. 07-729 |
| GRANITE MORTGAGE CO., INC., BRAD BAGEL, | : | |
| LEE BAGEL, and MORTGAGE ELECTRONIC | | |
| REGISTRATION SYSTEMS, INC. | : | |

## ORDER

AND NOW, this 30th of May, 2008, for the reasons stated in the foregoing Memorandum, it is hereby ORDERED that:

1) Plaintiffs' Motion to Reinstate the First Amended Complaint against Defendant MERS and for Leave to File a Second Amended Complaint (Doc. No. 35) is GRANTED;

2) Defendants Brad Bagel, Lee Bagel and GA Superior's Motion for Summary Judgment, which is reviewed by agreement as a Motion to Dismiss (Doc. No. 46), is GRANTED WITH PREJUDICE with respect to all federal claims;

3) MERS' Response to Plaintiffs' Motion to Reinstate First Amended Complaint (Doc. No. 37) is considered as MERS's Motion to Dismiss Plaintiffs' Second Amended Complaint, and is GRANTED WITH PREJUDICE;

4) Defendants Ivanhoe Financial, Inc. and Granite Mortgage will be DISMISSED WITH PREJUDICE for lack of prosecution;

5)   Plaintiffs' Motion to Strike (Doc. 47) is DENIED as moot; and

6)   As all federal claims have been dismissed with prejudice, Plaintiffs' state law claims are DISMISSED WITHOUT PREJUDICE.

7)   The clerk shall mark this case CLOSED.

BY THE COURT:

/s/ Michael M. Baylson
_____
Michael M. Baylson, U.S.D.J.

O:\CIVIL 07-08\07-729 Andrew v. Ivanhoe\07-729 Andrew v. Ivanhoe Memo re all outstanding motions.wpd